# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| B.N., by his mother and next friend A.N., on behalf of himself and a class of those similarly situated, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) CAUSE NO.: 3:09-CV-199-TLS |
| ANNE WALTERMANN MURPHY, *et al*, | )<br>) |
| Defendants. | ) |

## OPINION AND ORDER

The Plaintiff, B.N., on behalf of himself and a putative class of others similarly situated, has sued Anne Waltermann Murphy, in her official capacity as Secretary of the Indiana Family and Social Services Administration; Pat Casanova, in her official capacity as Interim Director of the Office of Medicaid Policy and Planning; and Megan Ornellas, in her official capacity as Director of the Division of Aging. The Plaintiff asks for declaratory and injunctive relief because a 2008 policy by the Indiana Family and Social Services Administration limits the number of hours of respite care services per month available to individual enrollees under the Aged and Disabled Waiver program. B.N., through his mother A.N., filed suit in LaPorte County, Indiana, on April 14, 2009, alleging violations of the Americans with Disabilities Act of 1990, the Rehabilitation Act of 1973, federal Medicaid law, and the Indiana Code's promulgation requirements. On May 1, 2009, the Defendants removed the case to this Court pursuant to 28 U.S.C. § 1331 and § 1367. On June 11, 2009, the Plaintiff filed a First Amended Class Action Complaint for Declaratory and Injunctive Relief [ECF No. 20], alleging the same violations as before, and additionally alleging violation of Indiana state Medicaid law. Also on June 11, the Plaintiff filed an Amended Motion for Class Certification [ECF No. 21] with a corresponding

Memorandum of Law in Support of Amended Motion for Class Certification [ECF No. 22]. On June 29, 2009, the Defendants filed Defendants' Memorandum of Law in Opposition to Plaintiff's Amended Motion for Class Certification [ECF No. 25], and with subsequent investigation filed Defendants' Supplemental Brief and Evidentiary Materials in Opposition to Plaintiff's Amended Motion for Class Certification [ECF No. 35]. The Plaintiff responded on October 15, 2009, with Plaintiffs' Reply in Support of Amended Motion for Class Certification [ECF No. 38]. Further, the parties have filed cross motions for summary judgment [ECF Nos. 39 & 45], but resolution of the Motion for Class Certification is appropriate before resolving the summary judgment issue.[1] The Defendants oppose maintenance of the Plaintiff's lawsuit as a class action.

## BACKGROUND

B.N. is a severely handicapped minor[2] who resides in LaPorte County, Indiana. He lives with his parents, and due to cerebral palsy and other developmental handicaps, requires nearly constant care. He cannot walk, talk, toilet, or eat, and is therefore fed by a tube inserted into his small intestine.

---

[1] Fed. R. Civ. P. 23(c)(1)(A) ("At an early practicable time after a person sues . . . , the court must determine by order whether to certify the action as a class action."). *See Larson v. JPMorgan Chase & Co.*, 530 F.3d 578, 581 (7th Cir. 2008) (opining that class certification issue should come before summary judgment); *Weismuller v. Kosobucki*, 513 F.3d 784, 786–87 (7th Cir. 2008) (same); *Bieneman v. City of Chi.*, 838 F.2d 962, 964 (7th Cir. 2008) ("It is . . . difficult to imagine cases in which it is appropriate to defer class certification until after a decision on the merits"); *Lady Di's, Inc. v. Enhanced Servs. Billing, Inc.*, No. 1:09-CV-340-SEB-DML, 2010 WL 4751659, at *1 (S.D. Ind. Nov. 16, 2010) (stating that "the general rule in the Seventh Circuit" is to resolve class certification first).

[2] In June 2009, B.N. was eight years old. (First Am. Verified Class Action Compl. for Declaratory and Injunctive Relief, ¶ 25, ECF No. 20.)

Indiana participates in the federal Medicaid program, providing medical services to many low-income individuals through the Indiana Family and Social Services Administration. To receive federal matching funds, Indiana's Medicaid program must be approved by the United States Department of Health and Human Services. Under federal Medicaid law, the Department of Health and Human Services may waive certain Medicaid requirements for states that provide "home or community-based services" for individuals who would otherwise require institutionalizing as long as the cost of the in-home health care is less than the cost of institutionalizing. 42 U.S.C. § 1396n(c)(1), (2)(D). In early 2008, the Indiana Family and Social Services Administration submitted a waiver request to the Department of Health and Human Services. One of the waiver provisions was a sixty hour per month limit on respite care services available to individuals enrolled in Indiana's Aged and Disabled Waiver program. Prior to this waiver provision, many individuals in Indiana were being approved for more than sixty hours per month in respite care services. In May 2008, the Department of Health and Human Services approved Indiana's requested waiver, and the sixty hour limitation went into effect in July 2008.

The evidence before the Court shows that many individuals in Indiana are eligible to receive funding for home or community-based services through the Medicaid prior authorization program, and that many individuals in Indiana who were previously approved for more than sixty hours of respite care services under the Aged and Disabled Waiver program were able to find providers and funding for the hours they needed in excess of sixty hours through the Medicaid prior authorization program. (Def.'s Mem. of Law in Opp'n to Pl.'s Am. Mot. for Class Certification 2, ECF No. 25.) Indeed, as part of its Motion for Summary Judgment, the Plaintiff could not show that there were more than thirteen individuals who were unable to obtain

replacement funding through the Medicaid prior authorization program. (Pl.'s Reply in Supp. of Mot. for Summ. J. and Resp. in Opp'n to Defs.' Mot. for Summ. J. 3, ECF No. 49; Filler Dep. 143, ECF No. 39-3.)

Prior to 2008, B.N. received a combination of in-home nursing services. He received 50 hours per month of in-home nursing services through the Medicaid prior authorization program, but these services were only available during the day on weekdays. He also received 80 hours per month of respite care services through the Aged and Disabled waiver program. When the 60 hour per month cap went into effect, B.N. applied for 80 hours of respite care services per month and was denied. He subsequently applied for 60 hours of respite care services per month and that request was approved. Because of the specifics of B.N.'s case, he was unable to make up the difference with funding from the Medicaid prior authorization program.

In the Plaintiff's Amended Motion for Class Certification, he defines the putative class as follows: "All persons in Indiana who are or will be enrolled in or eligible for the Aged and Disabled Waiver program and for whom more than sixty (60) hours a month in respite services is or will be medically necessary." (Am. Mot. for Class Certification 1; ECF No. 21.) The Defendants argue that the Plaintiff has not met the requirements of numerosity, commonality, typicality, nor any of the requirements under Federal Rule of Civil Procedure 23(b), and thus the putative class should not be certified.

**DISCUSSION**

## A.      Requirements for Class Certification

Federal Rule of Civil Procedure 23 governs the certification of class actions in federal court. It allows a member of a class to sue as a representative party on behalf of all the class members if:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). If all of these prerequisites are met, a court must also find that at least one of the subsections of Rule 23(b) is satisfied:

> (1) prosecuting separate actions by or against individual class members would create a risk of:
>
>> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>>
>> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
>
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
>> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>>
>> (B) the extent and nature of any litigation concerning the

> controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b). The party seeking class certification assumes the burden of demonstrating that it is appropriate, *Trotter v. Klincar*, 748 F.2d 1177, 1184 (7th Cir. 1984), and "[f]ailure to meet any of the Rule's requirements precludes class certification," *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008). The Court has "'broad discretion to determine whether certification of a class-action lawsuit is appropriate.'" *Id.*, 546 F.3d at 794 (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 629 (7th Cir. 2001)).

The Plaintiff seeks to include in this action all persons who are or will be enrolled in the Aged and Disabled Waiver program and for whom more than sixty hours per month of respite care services are or will be medically necessary. The Plaintiff asserts that he has satisfied Rule 23(a)(1)–(4) and Rule 23(b)(2). Of the four criteria enumerated in Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—the Defendants challenge the Plaintiff's ability to satisfy numerosity, commonality and typicality. Additionally, the Defendants challenge the Plaintiff's ability to meet any of the requirements of Rule 23(b). The Court will first analyze the Defendants' challenges to commonality, typicality, and under Rule 23(b)(2). The Court finds that the Plaintiff has met all of these requirements. But because the Court concludes the Plaintiff has failed to show numerosity, the Plaintiff's Motion for Class Certification will be denied.

**B.     Commonality, Typicality, and the Requirements of Rule 23(b)(2)**

The Court begins its analysis with an inquiry into commonality and typicality under Rule 23(a), and a further inquiry into whether the Plaintiff has met the requirements of Rule 23(b)(2). The Defendants have not challenged whether the Plaintiff will fairly and adequately represent the proposed class under Rule 23(a)(4), nor the qualifications and ability of the proposed class counsel to conduct the litigation, and the Court therefore finds those requirements to be met.

*1.     Commonality*

The Court finds that the Plaintiff has satisfied the commonality requirement of Rule 23(a)(2). Commonality is usually satisfied by "[a] common nucleus of operative fact." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). A common nucleus of facts is often present when "defendants have engaged in standardized conduct towards members of the proposed class." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) (citing *Chandler v. Sw. Jeep-Eagle, Inc.*, 162 F.R.D. 302, 308 (N.D. Ill. 1995)). Although some "facts pertaining to [the putative harm] vary from case to case," the commonality requirement of Rule 23(a)(2) is met where "[c]ommon questions of law such as the interpretation and validity of the state and federal statutes and regulations are present." *Like v. Carter*, 448 F.2d 798, 802 (8th Cir. 1971); *Rosario*, 963 F.2d at 1017 ("some factual variation among the class grievances will not defeat a class action.").

Here the question of whether the sixty hour cap on respite care services violates the Americans with Disabilities Act of 1990, the Rehabilitation Act of 1973, federal and state Medicaid law, and the promulgation requirements of the Indiana Code will be common to every individual who is not receiving the necessary hours of services through the Medicaid prior authorization program. The Defendants argue that each individual situation must be judged

differently since each individual may be approved for different numbers of hours and different types of services. But here the Defendants have "engaged in standardized conduct towards members of the proposed class." *Keele*, 149 F.3d at 594. As the Plaintiff argues, the issue for every member of the class will be the same—do these caps violate federal and state law? (Mem. of Law in Supp. of Am. Mot. for Class Certification 3.) For every individual who falls in the gap between the cap on respite care services and prior authorization funding, the common legal questions will control, and thus commonality is present. *See De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) ("similarity of legal theory may control even in the face of differences of fact"); *Jones v. Blinziner*, 536 F. Supp. 1181, 1190 (D.C. Ind. 1982) (commonality met where "question of whether defendant's policies . . . violate the Constitution of the United States, the applicable federal laws and regulations and Indiana's Rulemaking Act" was "common to the class as a whole"); *Rodriguez v. Swank*, 318 F. Supp. 289, 294 (D.C. Ill. 1970) (commonality met where questions of law including interpretation and constitutionality of the regulations were common to the class).

*2.     Typicality*

The Plaintiff has also satisfied the typicality requirement of Rule 23(a)(3). As the Supreme Court has noted, "[t]he commonality and typicality requirements of Rule 23(a) tend to merge." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982). The typicality requirement is usually satisfied when the named representative's claims "have the same essential characteristics as the claims of the class at large." *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 597 (7th Cir. 1993) (quoting *De La Fuente*, 713 F.2d at 232). Typicality is also met when the plaintiff's

claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente*, 713 F.2d at 232.

Here the Plaintiff's claim is typical of every member of the putative class. For every class member the claim will be that denial of more than sixty hours per month in respite services and the concomitant unavailability of prior authorization services violates state and federal law. The Defendants argue that the differences in each individual situation make the Plaintiff's claim atypical of the class he seeks to represent. But the Plaintiff's claim is typical because no matter the minor factual variations, every claim will be based on the same legal theory. *Id.* Under the Plaintiff's proposed class definition, the typicality requirement of Rule 23(a)(3) is met.

### 3. *Rule 23(b)(2)*

The Plaintiff's proposed class meets the requirements of Rule 23(b)(2), which requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). As the Seventh Circuit has stated, Rule 23(b)(2) "was intended to cover civil-rights cases." *Fujishima v. Bd. of Ed.*, 460 F.2d 1355, 1360 (7th Cir. 1972); *Tyson v. Grant Cnty. Sheriff*, No. 1:07-CV-0010, 2007 WL 1395563, at *5 (N.D. Ind. May 9, 2007) ("Rule 23(b)(2) was drafted specifically to facilitate relief in civil rights suits.").

Here the Plaintiff is seeking declaratory and injunctive relief in a civil rights case, and the requirements of Rule 23(b)(2) are met. The Government briefly argues that Rule 23(b)(2) cannot

9

be satisfied because respite care services are "highly personalized" and "based on the needs of each individual client." (Defs.' Mem. of Law in Opp'n to Pl.'s Am. Mot. for Class Certification 7.) But the state's action will "apply generally" to every individual who meets the class definition by denying respite care services, and thus injunctive or declaratory relief will be appropriate for the class. As the Plaintiff argues, the cap will apply to every individual falling within the class definition regardless of their individual needs. Accordingly, the Plaintiff has satisfied Rule 23(b)(2).

C.     The Plaintiff's Proposed Class and Numerosity

The parties' arguments for and against class certification center around the numerosity requirement. In his Amended Motion for Class Certification, the Plaintiff contends that the number of people in the class is in the hundreds. The Plaintiff makes this argument based on the implicit assumption that every individual who formerly received more than sixty hours of respite services would fall into the class. In their Memorandum of Law in Opposition to class certification, the Defendants argue that the number of people in the class is in the range of twenty to thirty; then, in their Supplemental Brief, based on newly-gathered information, the Defendants argue that the number of people in the class is only nine. The Defendants make this argument because their records show that once the caps were instituted, there were only nine individuals approved for more than sixty hours of respite care services.[3] Here the Plaintiff's rebuttal argument is well-taken—the Defendants are arguing the class is limited to those who received more than

---

[3]Pursuant to other litigation in Indiana state court, an injunction was entered against enforcement of a cap on *attendant* care services. The State apparently responded by allowing case managers to approve hours in excess of the caps for attendant care services as well as for respite care services. (Filler Dep. 68–69.)

sixty hours per month over a year after the cap had been in place, but that number is naturally small given that the state had been enforcing the cap for over a year. In its response, the Plaintiff argues the number of individuals in the class is in the hundreds because of data suggesting that just six months before the cap took effect there were more than 450 people receiving over sixty hours per month. However, the Plaintiff is again assuming that every individual who formerly received more than sixty hours per month of respite services will fit into the class definition.[4]

The Plaintiff's arguments fail because of the class definition itself. The putative class includes those for whom more than sixty hours of respite services per month will be medically necessary. Nowhere in its Class Certification motions does the Plaintiff address the Medicaid prior authorization program. The evidence before the Court suggests that many of those who formerly received more than sixty hours per month in respite care services are now able to get funding for the remainder of the necessary hours through the prior authorization program. (Filler Dep. 142–43.) It follows that if all of an individual's hours are being funded through one program or the other, then more than sixty hours per month of *respite care services specifically* are not medically necessary.[5] The burden is on the Plaintiff to show that the numerosity requirement is

---

[4]The Attorney for the Plaintiff confirmed this at the September 1, 2011, telephone conference [ECF No. 71].

[5]The Defendants have not raised the issue of whether more than sixty hours of services were in fact medically necessary for individuals previously approved for more than sixty hours. The Plaintiff argues that the agency's prior evaluation, and approval of a number of hours in excess of the cap, shows that such services were deemed medically necessary under Indiana Medicaid law. (Pl.'s Reply in Supp. of Am. Mot. for Class Certification 5.) The Defendants have not challenged that contention. In order to resolve the numerosity issue, and applying the agreed definition of a "medically reasonable and necessary service" as a service "that is required for the care or well being of the patient and is provided in accordance with generally accepted standards of medical or professional practice,"(First Am. Ver. Class Action Compl. ¶ 24), the Court must decide how many individuals who formerly received more than sixty hours of respite care services would still meet that definition of medical necessity for respite care services in light of the availability of prior authorization services.

satisfied. *Trotter*, 748 F.2d at 1184. Moreover, the Plaintiff's class must be more than speculative. *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989) (plaintiff "cannot rely on conclusory allegations that joinder is impractical or on speculation as to the size of the class in order to prove numerosity") (citing *Valentino v. Howlett*, 528 F.2d 975, 978 (7th Cir. 1976)); *Roe v. Town of Highland*, 909 F.2d 1097, 1100 n.4 (7th Cir. 1990) ("mere speculation" is not enough to demonstrate numerosity). Here the Plaintiff has not met his burden. The evidence before the Court shows that in past years hundreds of individuals were approved for more than sixty hours of respite care services per month. But the evidence does not show that hundreds of individuals who formerly received more than sixty hours are now unable—or will in the future be unable—to make up the difference through the Medicaid prior authorization program.[6] *See Marcial*, 880 F.2d at 957 ("[p]laintiffs contend that the class consists of approximately 400–600 persons but have failed to establish that 400–600 persons would have legitimate claims"). On the contrary, the largest number before the Court of those who fall in the gap between the respite care cap and prior authorization funding is thirteen.[7]

---

[6]The Plaintiff argues that the number of class members will increase in the future (Pl.'s Reply in Supp. of Am. Mot. for Class Certification 7–8), but no factual basis has been developed to support that argument. The Plaintiff has not shown why the number of people previously approved for more than sixty hours of respite service and who are unable to get funding for their excess hours through the prior authorization program will increase over time. Indeed, the record indicates that the number of those falling in the gap will decrease over time as the State makes efforts to find adequate solutions for those affected by the cap. (*See* Filler Dep. 91.) Even if those efforts are unsuccessful, the Plaintiff has not stated why the number of those falling in the gap—currently not shown to be a large number—would change dramatically in the future.

[7]The Plaintiff specifically alleges that at least thirteen individuals were unable to get funding through the prior authorization program for their hours in excess of sixty, at least as of March 27, 2009. (Pl.'s Reply in Supp. of Mot. for Summ. J. and Resp. in Opp'n to Defs.' Mot. for Summ. J. 3; Filler Dep. 143.) While this number comes from the Plaintiff's Summary Judgment briefing, it is nevertheless a pertinent statement before the Court of the number of class members falling within the class definition. If the Plaintiff determines that the number of those falling in the gap is larger than thirteen, the Plaintiff could put that information before the Court. *See Kohen v. Pacific Inv. Mgmt. Co.*, 571 F.3d 672, 679 (7th

Given the class definition as set forth by the Plaintiff, and given no evidence that there are more than thirteen individuals who would fit in the class, the question for the Court is whether joinder of approximately thirteen disabled individuals all residing in the State of Indiana would be impracticable. "[T]here is no magic number needed to establish numerosity." *Levitan v. McCoy*, No. 00 C 5096, 2003 WL 1720047, at *3 (N.D. Ill. Mar. 31, 2003) (citation omitted). *See Swanson v. Am. Consumer Indus., Inc.* 415 F.2d 1326, 1333 n.9 (7th Cir. 1969) (151 is "[c]ertainly . . . a sufficient number to permit a class suit to proceed"; even 40 "is a sufficiently large group to satisfy Rule 23(a)"); *EEOC v. Printing Indus. of Metro. Washington, D.C., Inc.*, 92 F.R.D. 51, 53 (D.C.D.C. 1981) ("as few as 25–30 members should raise a presumption that joinder would be impracticable"); *Allen v. Isaac*, 99 F.R.D. 45, 53 (D.C. Ill. 1983) (certifying class of 17 in light of geographic dispersion); *Rosario v. Cook County*, 101 F.R.D. 659, 661–62 (D.C. Ill. 1983) (certifying class of 20, and considering future class members); *Cross v. Nat'l Trust Life Ins. Co.*, 553 F.2d 1026, 1030 (6th Cir. 1977) (certifying class of 7, and considering future class members). *But see Arreola*, 546 F.3d at 798 ("[w]e can assume that 14 would not be enough"); *Ansari v. N.Y. Univ.*, 179 F.R.D. 112, 114 (S.D.N.Y. 1998) (numerosity "satisfied when the class comprises 40 or more members and . . . not . . . satisfied when the class comprises 21 or fewer"). Although there is no magic number, when the class is large, "numbers alone" tend to be dispositive. *Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D. Ill. 1986). But "when the class is small," courts must consider other factors to determine whether joinder is impracticable.

---

Cir. 2009) (advising that if new evidence surfaced, a party "could urge the district court to revisit its decision" regarding certification). But when asked on September 1, 2011, if there was any new evidence regarding numerosity, attorney for the Plaintiff stated there was none, ECF No. 71, and continued to argue the number of class members included a percentage of all who formerly received more than sixty hours of respite care services per month. For the reasons discussed above, that argument fails.

*Id.* Some of these factors include: "the geographical dispersion of the class, the ease with which class members may be identified," *Laramore v. Ill. Sports Facilities Auth.*, No. 89 C 1067, 1993 WL 45959, at *3 (N.D. Ill. Feb. 19, 1993), judicial economy, and the financial ability of the potential class members to bring individual suits, *Arenson v. Whitehall Convalescent and Nursing Home, Inc.*, 164 F.R.D. 659, 663 (N.D. Ill. 1996) (citing *Tenants Associated for a Better Spaulding v. U.S. Dep't of Housing and Urban Dev.*, 97 F.R.D. 726, 729 (N.D. Ill. 1983)).

The Plaintiff emphasizes the financial ability factor, arguing that because every potential member of the class is disabled and low–income, joinder for these particular class members would be impracticable for financial reasons. But financial ability is only one factor the Court must consider. The ease of joining the parties is also a significant factor. Here, the evidence before the Court suggests a class no more numerous than thirteen, all of whom are known to the Plaintiff based on discovery materials received. (*See* Filler Dep. 143; Dep. Ex. 16, ECF No. 39-5.) If the Plaintiff wishes to join these class members, identifying them should not be burdensome. *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981) (one important factor on the numerosity question is "the ease with which class members may be identified"); *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 132 (1st Cir. 1985) ("where class members can be easily identified, joinder is more likely to be practicable"); *Laramore*, 1993 WL 45959, at *3 (citing *Zeidman*). In the present case, the potential class members must either have a legal guardian to handle their affairs or be capable of deciding for themselves whether to join a lawsuit. If no guardian existed, then presumably these individuals would be institutionalized instead of receiving services through the Aged and Disabled Waiver program.

Furthermore, though the potential class members live in different parts of Indiana, the

14

degree of geographic diversity is nowhere near to the geographic diversity that would be present if they lived all across the country. *Compare Allen*, 99 F.R.D. at 53 (geographic diversity controlling when class members lived in seven states and were "scattered throughout the United States") *and Riordan*, 113 F.R.D. at 62 (geographic diversity controlling when class members lived in nine states) *with Winokur v. Bell Fed. Savings & Loan Assn.*, 1972 WL 123067, at *2 (N.D. Ill. Mar. 27, 1972) (declining to certify a class of 86 when potential class members were "located within a small geographic area"). Accordingly, the Court finds geographical diversity not dispositive where potential class members are located in only one state and are easily identifiable.

The Plaintiff has asserted that "certification would doubtless promote judicial economy" (Pl.'s Reply in Supp. of Am. Mot. for Class Certification 6), without showing why this is so. Given the small number of potential class members, a class action may or may not promote judicial economy in this case. Balancing the administrative requirements of a class action against the possibility of joining the relatively few known class members, the Court finds that the judicial economy factor is not dispositive.

Finally, the number of potential class members before the Court is significantly smaller than in the cases the Plaintiff cites concerning the financial ability factor. The Plaintiff argues that when the class members are disabled and low-income, their financial status militates strongly for impracticability of joinder because they are unable to bring individual suits. But the Plaintiff cites to cases where courts were certifying classes significantly larger than thirteen, and where financial ability was only one factor to be considered. *Arenson*, 164 F.R.D. at 663 (certifying class of at least 159 members, and considering, *inter alia*, the financial ability of nursing home

residents to pursue individual claims); *Matyasovszky v. Hous. Auth. of City of Bridgeport*, 226 F.R.D. 35, 40–41 (D. Conn. 2005) (certifying class of approximately 197, where members were "low income, disabled, and in some cases, homeless"); *Cortigiano v. Oceanview Manor Home for Adults*, 227 F.R.D. 194, 204–05 (E.D.N.Y. 2005) (certifying class of more than 150, and considering, *inter alia*, that the class members may have "inadequate resources to prosecute their own claims"); *Fields v. Maram*, No. 04 C 0174, 2004 WL 1879997, at *4 (N.D. Ill. Aug. 17, 2004) (certifying class of at least 200, and perhaps more than 800, and considering, *inter alia*, that the potential class members were "disabled and therefore . . . often of limited financial resources"); *Raymond v. Rowland*, 220 F.R.D. 173, 179 (D. Conn. 2004) (certifying class in the thousands, and considering, *inter alia*, that the potential class members were "by definition people of limited financial resources"); *Tenants Associated*, 97 F.R.D. at 729 (certifying class of at least 26, and considering, *inter alia*, "the likelihood that the individual plaintiff class members would be unable, financially or otherwise, to pursue their individual claims"). The Plaintiff's cases do not prove, and the Court declines to hold, that in every case where potential class members are disabled, joinder would therefore be impracticable for financial reasons. The Plaintiff has cited many cases where the disability and financial wherewithal of the potential class members was one of several factors used in a determination that a class more numerous than thirteen should be certified.[8] But given the small number of potential class members, the ease of

---

[8]The only case the Plaintiff has cited where financial difficulty of bringing individual lawsuits was a factor in the numerosity calculus and where the number of potential class members was similar to the number before the Court is *Tenants Associated*, 97 F.R.D. at 729 (certifying class of at least 26). But another factor that the *Tenants Associated* court found persuasive was the very real possibility that class members "would be dissuaded from individually pursuing" remedies because of "the possibility of retribution." *Id.* The Plaintiff has not contended, nor is there any reason to conclude, that potential class members in the matter before the Court would fear retribution by the Indiana Family and Social Services Administration.

16

identifying the few who fit in the class definition, the degree of geographic diversity, and the lack of any argument by the Plaintiff concerning judicial economy, the Court finds the Plaintiff has failed to show why joinder of these few class members would be impracticable in this case. Accordingly, the Plaintiff has failed to show numerosity.

## CONCLUSION AND ORDER

The Plaintiff has not satisfied numerosity under Rule 23(a)(1). Because the Plaintiff has failed to establish a requisite element under Rule 23, his Amended Motion for Class Certification [ECF No. 21] is DENIED.

SO ORDERED on September 27, 2011.

                                            s/ Theresa L. Springmann
                                          THERESA L. SPRINGMANN
                                          UNITED STATES DISTRICT COURT
                                          FORT WAYNE DIVISION